# Richmond.

## DICKINSON v. CLEMENT.

### November 6th, 1890.

1. JUDICIAL SALES—*Resale.*—Where judgment debtor bought his own land at sale under decree in creditors' suit against him, and failed to pay the purchase-money : *held,* a resale on terms of one-fourth cash and balance in one, two and three years is not inequitable under Code, section 3397.
2. IDEM—*Credits—Case at bar.*—Where decree to sell debtor's land in judgment creditor's suit, and the creditors garnishee bonds of previous purchasers of land from debtor, but realize nothing: *held,* debtor is not entitled to credit on the judgments for amount of said bonds, and in fact have no right to go on the lands sold until the lands retained by him have been exhausted. Code, § 3575.
3. APPELLATE PRACTICE—*Harmless error.*—Where error in amount of decree is released according to Code, section 3451, this court will not reverse the decree on that account.

Argued at Wytheville.   Decided at Richmond.

Appeal from decree of circuit court of Franklin county, rendered May 19th, 1888, in the creditors' suit wherein Caroline Clement and her husband, Charles I. Clement, are complainants, and Randolph Dickinson and others are defendants. The decree being adverse to Dickinson, he obtained an appeal and *supersedeas.*   Opinion states the case.

*Scott & Dupuy,* for the appellant.

*E. C. Burks,* for the appellees.

Fauntleroy, J., delivered the opinion of the court.

The female appellee, Mrs. Clement, is the sister of the appellant, Randolph Dickinson, who became indebted to her some time before the late civil war for upwards of three thousand dollars for money lent, as alleged. The debt fell due on January 1st, 1862. She indulged him for some thirteen years, he paying in the meantime a part of the debt. In a suit at law against him for the unpaid balance of the said debt, she recovered a judgment on the 13th day of April, 1875. Failing to get satisfaction of this judgment by execution out of appellant's personal estate, she and her husband, in 1878, filed their bill in equity to enforce the lien of their judgment against appellant's real estate. The suit was in the form of a general creditor's bill, though the liens, other than the judgment of Clement and wife, were insignificant.

The appellant, Dickinson, was the owner of valuable lands in Franklin county, bound by these liens. He had sold several parcels of his land to different persons—three parcels prior to the judgment of Clement and wife, and two parcels subsequent thereto. The sales were on credit, and the purchase-money aggregated about two thousand three hundred and forty dollars, the title being retained until the purchase-money should be paid. The lands retained by appellant were more than sufficient in value to satisfy the liens sought to be enforced against them. Accounts of the lands thus retained by appellant, and of the liens thereon, and their respective priorities, were ordered and taken, and the report thereof, made on the 25th of April, 1879, was confirmed by the court. Whereupon a decree was made directing a sale of the lands to satisfy the liens. The sale was made by the commissioner appointed for the purpose on the 18th day of January, 1882, on the terms prescribed by the decree, on a credit of one, two and three years for equal interest-bearing instalments of the

purchase-money (except as to a small amount in cash), the purchasers giving bonds, with security, and title retained by the court. The land was sold in parcels. The appellee, Mrs. Clement, bought one parcel, and, jointly with Martha C. Dickinson, another; and a third parcel was bought by Creed H. Adams, the prices of the three parcels sold aggregating one thousand six hundred and eighteen dollars and fifty cents. The whole of the residue of the land, which was the bulk of it, was bought by the *owner*, Randolph Dickinson, appellant, at five thousand and thirty-three dollars and fifty cents. These sales were reported; and, there being no exception or objection to the sales, they were confirmed by the court. When Dickinson's first purchase-money bond became due he defaulted, and a rule for resale was made against him. He answered the rule, setting up as a defence that Clement and wife had sued out, on their judgment, process of garnishment against his debtors, who had purchased lands from him, of whom they, he alleged, had made collections to which he was entitled as credits on what he owed them by judgment; and he asked for an account of these alleged collections. The court, deeming the answer to the rule insufficient, on the 13th October, 1883, ordered the resale. Upon the petition of Dickinson, asking the court to review this decree or order for a resale, to set it aside, and order the accounts asked for, and meantime to enjoin the execution of the decree, an injunction was awarded; and on the coming in of the answer of Clement and wife to the petition, admitting the suing out of the process of garnishment, but denying that anything had been realized thereby, and averring that the garnishment proceedings had been dismissed, the court, by its decree of 20th of May, 1884, dissolved the injunction and denied the rehearing. Thereupon Dickinson appealed to this court, which reversed the decree of the circuit court and remanded the cause for further proceedings. Pursuant to the decree of this court, the circuit court ordered the accounts and inquiries directed by this court, and

Master Commissioner Jackson made his report, which, upon exceptions by Dickinson, was recommitted. He made a sec-. ond report, which was excepted to by Dickinson, and the cause was recommitted to another master commissioner (Carper), who made his report, and to this, also, Dickinson excepted. The court, by its decree of May 19th, 1888, adopted "Statement No. 1" of Carper's report, which showed the purchase-money owing to the court by Dickinson, and approved and adopted a statement which it ordered to be made out at the bar—"Statement G. C."—showing the balance due Clement and wife on their judgment, and ordered that the lands purchased by Dickinson at the former sale be resold, unless, within the time prescribed, Dickinson, the defaulting purchaser from the court, should pay to the receiver the purchase-money shown by Statement No. 1 of commissioner's report to be due to the court; the decree reciting that this amount of purchase-money, due by Dickinson, "was not more than sufficient to pay off the liens proved against him in this cause now remaining unpaid, and the unpaid costs of this suit."

It is from this decree that this appeal is taken.

There is no error in the decree complained of which will justify or move this court to reverse it. The appellant, Dickinson, is a defaulting purchaser at a judicial sale, regularly made, duly reported to and confirmed by this court, without exception, of his own land, to satisfy admittedly just and solemnly adjudicated debts due by him—one of them a large sum, which he has owed to the female appellee, his sister, for over twenty-eight years.

The original amount of the judgment due to his sister, Mrs. Clement, is not disputed; and the statement, "G. C.," made and adopted by the court, showing the balance due Clement and wife in their judgment, is admitted to be correct; except that, appellant claims that he is entitled to other credits for collections alleged to have been made by the garnishment pro-

ceedings, which were not allowed in that statement, and which he could and would have established, if the proper accounts had been ordered and the opportunity allowed him. It was, in fact, upon this allegation, assigned as error, that the decree of 28th of May, 1884, was reversed by this court upon former appeal, and the case remanded to the circuit court to inquire into the matter of these garnishment proceedings and their fruition. The circuit court did order the inquiry, and Commissioner Jackson made the inquiry and reported that nothing was realized or collected on them. That report was recommitted to Commissioner Jackson, expressly in the language of the order, "in order to allow Dickinson time to take proof," and the commissioner was "ordered, on re-opening of said account, to give said Dickinson notice thereof." Commissioner Jackson, after giving Dickinson the notice required, renewed the inquiry directed by the court; and he reported that he was "unable to report any other facts not stated in his prior report, and which he sees no cause to amend." Then, even this second report of Commissioner Jackson was recommitted to Commissioner Carper, and he made the report which was approved and adopted by the court as the basis of its decree. Thus Dickinson had *three*, regular, formal occasions made for him to offer proof of the collections which he alleged to have been made by Clement and wife on their garnishment proceedings, and yet in neither instance did he offer any proof whatever to support his allegations as to the pretended collections by Clement and wife—allegations which had been denied by them in their sworn answer, wherein they say "they deny they ever realized one cent on account of suggestions caused to be issued by them, but said suggestions were all dismissed, because these respondents could not compel complainant, Dickinson, to convey the legal title to said parties, and they would not pay without." The burden of proof was on Dickinson, and he made none, nor even offered any. On the contrary, his only evidence on this point proves

that no collections whatever were made by Clement and wife by virtue of the garnishment proceedings; and Dickinson says in his answer, in reference to these alleged collections by Clement and wife, that "these debts for land sold"—by him— "have never been collected." But he contends that the collection of the purchase-money debts, due to him by his vendees, for parcels of his lands sold to them, was, by the ineffectual garnishment proceedings, taken away from him; and that Clement and wife are bound in equity to take these land bonds of his, at their face value, and to credit the amount of them upon their judgment against him, in exoneration, *pro tanto*, of his lands, which were sold by the court to pay the judgment, and which he, Dickinson, bought at the said sale, and for which he is in default of payment. There is nothing in the record to show that the lien creditors ever agreed to accept these bonds and forbear the prosecution of their right and remedies against the lands bought by Dickinson, and retained by him until the land bonds were collected; and the record shows that the proceedings by rules against his vendees for the purchase-money for the parcels of land sold by him, was on *his* motion, at *his* suggestion, and to aid *him* to make the bonds available for his relief; but he was and is the principal debtor, and the great bulk of the lands which were bought by him at the judicial sale to satisfy the lien creditors, is the primary fund in the hands of the court, liable for the payment of the liens adjudicated, and for which the land was sold, and bought by him, under the decree of the court. Indeed, the lien creditors have no right to go against these parcels of the lands, detached and sold by him, until they shall have exhausted the land retained by him. Code of Va., 1887, sec. 3575.

Appellant Dickinson is a defaulting purchaser of land sold by the court, and the decree appealed from is merely to *resell* the same lands, or so much of them as he retains, to satisfy the adjudged liens for which the lands were sold; the main and

principal of which liens is the unsatisfied debt of his sister, Mrs. Clement, which he has owed to her, and the payment of which he has successfully eluded up to this time, for over twenty-eight years.

It is assigned as error that "the terms upon which appellant's lands are decreed to be sold are harsh and oppressive, even if it were proper to sell them at all at this time; that there are very few men in this section able to bid for these lands upon such terms." This is a *resale* of lands belonging to the court for the lien creditors for the default of Dickinson, the purchaser, to comply with the terms of the first sale; and though the court might well have ordered the lands to be resold for this default for cash so far as Dickinson is concerned, yet the terms prescribed by the decree are, one-fourth of the purchase-money in cash, and for the residue a credit of equal instalments at six, twelve and eighteen months, with interest from day of sale. The statute provides that "a court, in a suit pending therein, may make a decree or order for the sale of property in any part of the State, and may direct the sale to be for cash or on such credit and terms as it may deem best." Code of Virginia 1887, section 3397.

Can it be contended that the terms of this resale of land, sold under a former decree of the court to satisfy adjudged and admitted liens, and bought by the owner of the land, should be on the same terms of credit allowed by the first decree of one, two and three years for equal instalments of the purchase-money? If so, then on successive resales for default of the purchaser, who was allowed to buy his own land, how long would it take to end the suit, and when and what would the lien creditors get in the end?

There is no error or injustice in the principles of the cause as settled in the decree of the 19th of May, 1888, but there is an error inadvertently made in the figures of the amount which Dickinson is required to pay to the receiver, in default of which his land is ordered to be resold, which amount ex-

ceeds the amount of the unpaid liens, as shown by the record,
in the sum of five hundred and forty-one dollars and seventy-
three cents.

After the decree was entered the lien creditors discovered
the mistake and, in vacation, corrected it, as they had the
right to do under the statute (Code of Virginia 1887, section
3451), by a writing dated the 10th of August, 1888, signed by
them, attested by the clerk of the court, and filed among the
papers of the cause, releasing the said decree to the amount of
the said excess over the amount of the unpaid liens, to-wit:
the said sum of five hundred and forty-one dollars and sev-
enty-three cents.   And thus the error in the amount decreed
to be paid, being corrected and cured as the statute provides,
there is no error in the record, and leaves the decree to be
enforced for the sum of six thousand and eight dollars and
eighty-two cents, as of the 19th of May, 1888, and the costs,
to be credited by the cost of the transcript of the record in
the first appeal, which was included in the costs recovered by
appellant upon that appeal, but which the clerk of the circuit
court failed to certify.

As thus amended, we are of opinion to affirm the decree
appealed from.   .

DECREE AFFIRMED.